**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Reese Walker Baker, | § | |
| Plaintiff, | § | |
| | § | CASE NO. 4:24-cv-01845 |
| v. | § | |
| | § | |
| Experian Information Solutions, Inc.; | § | |
| Equifax Information Services, LLC; | § | |
| TransUnion, LLC; and Randolph-Brooks | § | |
| Federal Credit Union, | § | |
| Defendants. | § | |

COMES NOW Plaintiff **REESE WALKER BAKER** ("Plaintiff"), an individual, based on information and belief, to allege as follows:

## INTRODUCTION

1.     This case arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their failure to block three fraudulent accounts in Plaintiff's credit reports.

2.     Defendant Randolph-Brooks Federal Credit Union ("RBFCU") is inaccurately reporting three fraudulent debts, which were the result of identity theft, on Plaintiff's credit reports.

3.     Defendant Experian Information Solutions, Inc. ("Experian") is inaccurately reporting the fraudulent RBFCU tradelines.

4.     Defendant Equifax Information Services, LLC ("Equifax") is inaccurately reporting the fraudulent RBFCU tradelines.

5.     Defendant TransUnion, LLC ("TransUnion") is inaccurately reporting the fraudulent RBFCU tradelines.

6.     The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system and unfair credit reporting methods undermine the public confidence that is essential to the continued functioning of the banking system.

7.     Congress instituted specific protections for those who are victims of identity theft

by requiring creditors and credit bureaus to act quickly to block the fraudulent accounts. Creditors and credit bureaus know that deviating from recognized credit reporting standards will result in the fraudulent accounts remaining on consumers reports and therefore significantly impacting their credit scores and their creditworthiness.

## JURISDICTION & VENUE

8.      Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

9.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, 1367, and 15 U.S.C. § 1681.

10.     This venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

11.     Plaintiff alleges that, for purposes of establishing residency under 28 U.S.C. § 1391(b)(1), each named Defendant conducts sufficient business within the forum state and this Court has personal jurisdiction over Defendants under 28 U.S.C. §§ 1391(c)(2) and 1391(d).

## FACTUAL BACKGROUND

12.     Plaintiff is the victim of identity theft.

13.     In or about November 2022, Plaintiff learned that someone had opened fraudulent accounts using his personal information.

14.     On or about May 4, 2022, the identity thief applied for and opened an account with RBFCU.

15.     On or about May 22, 2022, the identity thief applied for and opened a second account with RBFCU.

16.     On or about June 7, 2022, the identity thief applied for and opened a third account with RBFCU.

17.     The identity thief then maxed out, or nearly maxed out, each of the three accounts by September 2022.

18.     In response, RBFCU sent Plaintiff multiple letters detailing the accounts in or about November 2022. This was the first Plaintiff became aware of the fraudulent accounts.

19.     In or about November 2022, Plaintiff called RBFCU to directly dispute the accounts as the result of identity theft. RBFCU directed Plaintiff to report the fraud and assigned him a case number.

20.     Despite the fact the history of these accounts follows the quintessential fraud

pattern (open multiple accounts, max out all accounts, stop paying), and despite the fact Plaintiff directly notified RBFCU of the fraud as soon as he became aware, RBFCU refused to close the accounts or cease reporting the fraud to the credit reporting agencies.

21.    Each of the three RBFCU accounts are reporting on Plaintiff's Experian, Equifax, and TransUnion (collectively, the "CRA Defendants") reports.

22.    On December 2, 2022, Plaintiff filed a police report with Memorial Villages Police Department in Houston, Texas, Case # 22-0895 (the "Police Report"), which specifically identified that he was the victim of identity theft.

23.    On or about January 25, 2023, Plaintiff sent dispute letters to Equifax and TransUnion regarding the fraudulent activity on his reports.

24.    The dispute letter sent to TransUnion (the "First TransUnion Dispute Letter") specifically put RBFCU and TransUnion on notice that someone had applied for credit in his name that was not him and not authorized by him. The dispute stated the accounts were opened fraudulently and requested they be removed from his credit report.

25.    Plaintiff's First TransUnion Dispute Letter included a copy of his driver's license and the Police Report.

26.    Plaintiff is informed and believes that TransUnion received Plaintiff's First TransUnion Dispute Letter and, in response, sent the dispute to RBFCU, as the data furnisher, via an ACDV through e-OSCAR.

27.    The dispute letter sent to Equifax (the "First Equifax Dispute Letter") specifically put RBFCU and Equifax on notice that someone had applied for credit in his name that was not him and not authorized by him. The dispute stated the accounts were opened fraudulently and requested they be removed from his credit report.

28.    Plaintiff's First Equifax Dispute Letter included a copy of his driver's license and the Police Report.

29.    Plaintiff is informed and believes that Equifax received Plaintiff's First Equifax Dispute Letter and, in response, sent the dispute to RBFCU, as the data furnisher, via an ACDV through e-OSCAR.

30.    On or about March 28, 2024, Plaintiff sent dispute letters to Experian, Equifax and TransUnion regarding the fraudulent activity on his reports.

31.    The dispute letter sent to TransUnion (the "Second TransUnion Dispute Letter")

specifically put RBFCU and TransUnion on additional notice that someone had applied for credit in his name that was not him and not authorized by him. The dispute stated the accounts were opened fraudulently and requested they be removed from his credit report. The dispute referred to his prior, January 2023 disputes, and the fact that the account numbers had been changed but the accounts had not been blocked or removed from his credit report.

32.    Plaintiff's Second TransUnion Dispute Letter included a copy of the tradelines as shown on a recent credit report, a copy of his driver's license, a bill addressed to him, the Police Report, and FCRA Section 605B (15 U.S.C. § 1681c-2).

33.    Plaintiff is informed and believes that TransUnion received Plaintiff's Second TransUnion Dispute Letter and, in response, sent the dispute to RBFCU, as the data furnisher, via an ACDV through e-OSCAR.

34.    The dispute letter sent to Equifax (the "Second Equifax Dispute Letter") specifically put RBFCU and Equifax on additional notice that someone had applied for credit in his name that was not him and not authorized by him. The dispute stated the accounts were opened fraudulently and requested they be removed from his credit report. The dispute referred to his prior, January 2023 disputes, and the fact that the account numbers had been changed but the accounts had not been blocked or removed from his credit report.

35.    Plaintiff's Second Equifax Dispute Letter included a copy of the tradelines as shown on a recent credit report, a copy of his driver's license, a bill addressed to him, the Police Report, and FCRA Section 605B (15 U.S.C. § 1681c-2).

36.    Plaintiff is informed and believes that Equifax received Plaintiff's Second Equifax Dispute Letter and, in response, sent the dispute to RBFCU, as the data furnisher, via an ACDV through e-OSCAR.

37.    The dispute letter sent to Experian (the "Experian Dispute Letter") specifically put RBFCU and Experian on notice that someone had applied for credit in his name that was not him and not authorized by him. The dispute stated the accounts were opened fraudulently and requested they be removed from his credit report. The dispute referred to his prior, January 2023 disputes, and the fact that the account numbers had been changed but the accounts had not been blocked or removed from his credit report.

38.    Plaintiff's Experian Dispute Letter included a copy of the tradelines as shown on a recent credit report, a copy of his driver's license, a bill addressed to him, the Police Report, and

FCRA Section 605B (15 U.S.C. § 1681c-2).

39. Plaintiff is informed and believes that Experian received Plaintiff's Experian Dispute Letter and, in response, sent the dispute to RBFCU, as the data furnisher, via an ACDV through e-OSCAR.

40. Out of two separate disputes sent to TransUnion, TransUnion sent no reinvestigation results to Plaintiff.

41. Out of two separate disputes sent to Equifax, Equifax sent no reinvestigation results to Plaintiff.

42. In response to the dispute sent to Experian, Experian sent reinvestigation results dated April 23, 2024, which stated the three fraudulent accounts were verified as accurate; however, it suppressed eight (8) inquiries made by RBFCU which directly related to the fraudulent accounts.

43. On May 10, 2024, Plaintiff obtained new credit reports from Experian, Equifax, and TransUnion to see if the reporting had been corrected.

44. Plaintiff's credit report from Experian that was obtained on May 10, 2024, more than 30 business days after Experian received Plaintiff's dispute package, and still contained the fraudulent RBFCU accounts despite notification via a detailed and thorough dispute.

45. Plaintiff's credit report from Equifax that was obtained on May 10, 2024, more than one (1) year and four (4) months after Equifax received Plaintiff's first dispute package, and still contained the fraudulent RBFCU accounts despite notification via two separate, detailed and thorough disputes.

46. Plaintiff's credit report from TransUnion that was obtained on May 10, 2024, more than one (1) year and four (4) months after TransUnion received Plaintiff's first dispute package, and still contained the fraudulent RBFCU accounts despite notification via two separate, detailed and thorough disputes.

47. Plaintiff alleges that each and every Defendant is familiar with the FCRA requirements and credit reporting industry standards and subscribes thereto.

48. Plaintiff alleges that each and every Defendant understands that the FCRA requires specific actions be taken to help safeguard consumers from identity thieves ruining their credit.

49. Plaintiff alleges that each and every Defendant understands that deviation from the FCRA requirements or credit reporting industry standards can, and often does, result in the denial

of credit, higher interest rates, and prompts a negative inference that would not be drawn if the data were reported or blocked in accordance with the recognized standards.

50.     Plaintiff alleges that all of Defendants' actions alleged herein were committed knowingly, intentionally, and in reckless disregard of the unambiguous meaning of the FCRA, regulatory guidelines on accurate reporting, and credit reporting industry standards to purposefully undermine his ability to repair his Credit Score and remove fraudulent activity from his reports.

51.     In the alternative, Plaintiff alleges that each and every Defendants' actions were the result of negligent policies, procedures, and an objectively unreasonable interpretation of the FCRA, all which inevitably led to inaccurate, misleading, or incomplete credit reporting.

**REPORTING AFTER DISPUTES**

52.     Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**a. Inaccuracy – RBFCU**

53.     After multiple notices of dispute, both direct and indirect, RBFCU continues to inaccurately report three fraudulent accounts on Plaintiff's credit reports.

54.     Despite actual knowledge, RBFCU continued to report a fraudulent account on Plaintiff's Experian credit report. The account, beginning in 22226xxxx, is reported with a payment status of "Account charged off. $14,802 written off. $14,802 past due as of Apr 2024", a charge off amount of "$14,802", an outstanding balance of "$14,802", an amount past due of "$14,802", payment history reflecting the account was 30, 60, 90, 120, 150 days past due from September 2022 through January 2023, and "CO" for charge off in the payment history from February 2023 through April 2024. This is patently incorrect as this account was the result of identity theft, and it should have been blocked. This account shows it was last reported on April 30, 2024.

55.     Despite actual knowledge, RBFCU continued to report a second fraudulent account on Plaintiff's Experian credit report. The account, beginning in 520069xxxxxxxxxx, is reported with a payment status of "Account charged off. $4,905 written off. $4,905 past due as of Apr 2024", a charge off amount of "$4,905", an outstanding balance of "$4,905", an amount past due of "$4,905", payment history reflecting the account was 30, 60, 90, 120, 150, 180 days past due from October 2022 through March 2023, and "CO" for charge off in the payment history from April 2023 through April 2024. This is patently incorrect as this account was the result of identity

theft, and it should have been blocked. This account shows it was last reported on April 24, 2024.

56.     Despite actual knowledge, RBFCU continued to report a third fraudulent account on Plaintiff's Experian credit report. The account, beginning in 520069xxxxxxxxxx, is reported with a payment status of "Account charged off. $1,072 written off. $1,072 past due as of May 2024", a charge off amount of "$1,072", an outstanding balance of "$1,072", an amount past due of "$1,072", payment history reflecting the account was 30, 60, 90, 120, 150, 180 days past due from October 2022 through March 2023, and "CO" for charge off in the payment history from April 2023 through May 2024. This is patently incorrect as this account was the result of identity theft, and it should have been blocked. This account shows it was last reported on May 7, 2024.

57.     Despite actual knowledge, RBFCU continued to report a fraudulent account on Plaintiff's Equifax credit report. The account, beginning in 22226xxxx, is reported with a payment status of "CHARGE_OFF", a charge off amount of "$14,802", an outstanding balance of "$14,802", an amount past due of "$14,802", payment history reflecting the account was 30, 60, 90, 120, 150 days past due from October 2022 through February 2023, and "CO" for charge off in the payment history from March 2023 through April 2024. This is patently incorrect as this account was the result of identity theft, and it should have been blocked. This account shows it was last reported on May 1, 2024.

58.     Despite actual knowledge, RBFCU continued to report a second fraudulent account on Plaintiff's Equifax credit report. The account, beginning in 520069xxxxxxxxxx, is reported with a payment status of "CHARGE_OFF", a charge off amount of "$4,905", an outstanding balance of "$4,905", an amount past due of "$4,905", payment history reflecting the account was 30, 60, 120, 150, 180, 180 days past due from October 2022 through March 2023, and "CO" for charge off in the payment history from April 2023 through March 2024. This is patently incorrect as this account was the result of identity theft, and it should have been blocked. This account shows it was last reported on April 24, 2024.

59.     Despite actual knowledge, RBFCU continued to report a third fraudulent account on Plaintiff's Equifax credit report. The account, beginning in 520069xxxxxxxxxx, is reported with a payment status of "CHARGE_OFF", a charge off amount of "$1,072", an outstanding balance of "$1,072", an amount past due of "$1,072", payment history reflecting the account was 30, 60, 90, 150, 180 days past due from October 2022 through February 2023, and "CO" for charge off in the payment history from March 2023 through April 2024. This is patently incorrect as this

account was the result of identity theft, and it should have been blocked. This account shows it was last reported on May 7, 2024.

60.     Despite actual knowledge, RBFCU continued to report a fraudulent account on Plaintiff's TransUnion credit report. The account, beginning in 22226xxxx, is reported with a payment status of "Charge-off", a charge off amount of "$14,802", an outstanding balance of "$14,802", an amount past due of "$14,802", payment history reflecting the account was 30, 60, 90, 120, 120 days past due from September 2022 through January 2023, and "CO" for charge off in the payment history from February 2023 through April 2024. This is patently incorrect as this account was the result of identity theft, and it should have been blocked. This account shows it was last reported on April 30, 2024.

61.     Despite actual knowledge, RBFCU continued to report a second fraudulent account on Plaintiff's TransUnion credit report. The account, beginning in 520069xxxxxxxxxx, is reported with a payment status of "Charge-off", a charge off amount of "$4,905", an outstanding balance of "$4,905", an amount past due of "$4,905", payment history reflecting the account was 30, 60, 120, 120, 120, 120 days past due from October 2022 through March 2023, and "CO" for charge off in the payment history from April 2023 through April 2024. This is patently incorrect as this account was the result of identity theft, and it should have been blocked. This account shows it was last reported on April 24, 2024.

62.     Despite actual knowledge, RBFCU continued to report a third fraudulent account on Plaintiff's TransUnion credit report. The account, beginning in 520069xxxxxxxxxx, is reported with a payment status of "Charge-off", a charge off amount of "$1,072", an outstanding balance of "$1,072", an amount past due of "$1,072", payment history reflecting the account was 30, 60, 90, 120, 120 days past due from October 2022 through February 2023, and "CO" for charge off in the payment history from March 2023 through May 2024. This is patently incorrect as this account was the result of identity theft, and it should have been blocked. This account shows it was last reported on May 7, 2024.

63.     Reporting a debt that occurred as a result of identity theft is patently incorrect.

64.     Plaintiff alleges that RBFCU did not investigate whether the accounts were opened fraudulently.

65.     Experian, Equifax, and TransUnion all provided notice to RBFCU that Plaintiff was disputing the inaccurate and misleading information, but RBFCU failed to conduct a reasonable

investigation of the information as required by the FCRA.

66.     Plaintiff directly disputed and provided notice to RBFCU that the accounts were opened as the result of fraud, but RBFCU failed to conduct a reasonable investigation of the information as required by the FCRA.

67.     Based on Plaintiff's at least six (6) disputes, along with its own internal records, RBFCU should have known that the accounts were opened fraudulently and that the accounts should not be reported.

68.     Plaintiff alleges that RBFCU did not review if its reporting complied with the FCRA or industry standards for credit reporting, the dispute letters it received from the CRAs, the direct dispute it received from Plaintiff, or even its own internal records concerning the account.

69.     If RBFCU reviewed such standards and records, RBFCU would have seen that its reporting was not in compliance and was therefore inaccurate.

70.     RBFCU should have requested removal of the tradelines from each credit bureau once it was notified the accounts were opened as the result of identify theft.

71.     By continuing to report the accounts as described herein, it incorrectly appears to third parties viewing Plaintiff's credit reports that Plaintiff opened three RBFCU accounts, has not made payments in years, and that the accounts were charged off and are outstanding. In addition to being patently incorrect, this makes RBFCU's reporting misleading.

72.     Further, as this inaccurate reporting is being used to calculate Plaintiff's Credit Score, the credit score along being what most lenders use to determine Plaintiff's creditworthiness, it is misleading in such a way as to adversely affect credit decisions.

73.     The lack of investigation and reporting of inaccurate and fraudulent information by RBFCU is unreasonable.

**b.  Inaccuracy – Equifax**

74.     Despite multiple disputes, Equifax failed to block the fraudulent RBFCU accounts from reporting.

75.     After being notified the RBFCU accounts were fraudulent, due to identity theft, Equifax was required to block the accounts within 4 days. However, it failed to do so.

76.     Further, Equifax did not block the accounts at all. Instead, it allowed RBFCU to continue to report and update the accounts with derogatory information despite knowledge they were not Plaintiff's accounts.

77.     On multiple occasions Equifax failed to comply with the FCRA or its duties to maintain maximum accuracy of Plaintiff's credit file.

78.     Equifax ignored both of Plaintiff's dispute letters, the Police Report, and its duties under the Fair Credit Reporting Act.

79.     Plaintiff alleges that Equifax did not review if its reporting complied with the FCRA or industry standards for credit reporting, the dispute letters it received from Plaintiff, or its requirement to block fraudulent accounts.

80.     If Equifax reviewed such standards and records, Equifax would have seen that its reporting was not in compliance and was therefore inaccurate.

81.     By continuing to report the RBFCU tradelines, it incorrectly appears to third parties viewing Plaintiff's credit report that Plaintiff opened three RBFCU accounts, has not made payments in years, and that the accounts were charged off and are outstanding. In addition to being patently incorrect, this makes Equifax's reporting misleading.

82.     Further, as this inaccurate reporting is being used to calculate Plaintiff's Credit Score, the credit score along being what most lenders use to determine Plaintiff's creditworthiness, it is misleading in such a way as to adversely affect credit decisions.

83.     The lack of investigation and reporting of inaccurate and fraudulent information by Equifax is unreasonable.

   **c.  Inaccuracy – TransUnion**

84.     Despite multiple disputes, TransUnion failed to block the fraudulent RBFCU accounts from reporting.

85.     After being notified the RBFCU accounts were fraudulent, due to identity theft, TransUnion was required to block the accounts within 4 days. However, it failed to do so.

86.     Further, TransUnion did not block the accounts at all. Instead, it allowed RBFCU to continue to report and update the accounts with derogatory information despite knowledge they were not Plaintiff's accounts.

87.     On multiple occasions TransUnion failed to comply with the FCRA or its duties to maintain maximum accuracy of Plaintiff's credit file.

88.     TransUnion ignored both of Plaintiff's dispute letters, the Police Report, and its duties under the Fair Credit Reporting Act.

89.     Plaintiff alleges that TransUnion did not review if its reporting complied with the

FCRA or industry standards for credit reporting, the dispute letters it received from Plaintiff, or its requirement to block fraudulent accounts.

90. If TransUnion reviewed such standards and records, TransUnion would have seen that its reporting was not in compliance and was therefore inaccurate.

91. By continuing to report the RBFCU tradelines, it incorrectly appears to third parties viewing Plaintiff's credit report that Plaintiff opened three RBFCU accounts, has not made payments in years, and that the accounts were charged off and are outstanding. In addition to being patently incorrect, this makes TransUnion's reporting misleading.

92. Further, as this inaccurate reporting is being used to calculate Plaintiff's Credit Score, the credit score along being what most lenders use to determine Plaintiff's creditworthiness, it is misleading in such a way as to adversely affect credit decisions.

93. The lack of investigation and reporting of inaccurate and fraudulent information by TransUnion is unreasonable.

**d.    Experian**

94. Despite dispute, Experian failed to block the fraudulent RBFCU accounts from reporting.

95. After being notified the RBFCU accounts were fraudulent, due to identity theft, Experian was required to block the accounts within 4 days. However, it failed to do so.

96. Further, Experian did not block the accounts at all. Instead, it allowed RBFCU to continue to report and update the accounts with derogatory information despite knowledge they were not Plaintiff's accounts.

97. On multiple occasions Experian failed to comply with the FCRA or its duties to maintain maximum accuracy of Plaintiff's credit file.

98. Experian ignored Plaintiff's dispute letter, the Police Report, and its duties under the Fair Credit Reporting Act.

99. Plaintiff alleges that Experian did not review if its reporting complied with the FCRA or industry standards for credit reporting, the dispute letters it received from Plaintiff, or its requirement to block fraudulent accounts.

100. If Experian reviewed such standards and records, Experian would have seen that its reporting was not in compliance and was therefore inaccurate.

101. By continuing to report the RBFCU tradelines, it incorrectly appears to third parties

viewing Plaintiff's credit report that Plaintiff opened three RBFCU accounts, has not made payments in years, and that the accounts were charged off and are outstanding. In addition to being patently incorrect, this makes Experian's reporting misleading.

102.    Further, as this inaccurate reporting is being used to calculate Plaintiff's Credit Score, the credit score along being what most lenders use to determine Plaintiff's creditworthiness, it is misleading in such a way as to adversely affect credit decisions.

103.    The lack of investigation and reporting of inaccurate and fraudulent information by Experian is unreasonable.

**e.    Damages**

104.    Plaintiff pulled his credit reports at issue at a cost for access to the reports, after the dispute process, specifically for the sole purpose of verifying that the inaccuracies were fixed.

105.    As a result of the incorrect reporting, Plaintiff has incurred out-of-pocket expenses, and has also suffered significant reputational harm, emotional harm, physical sickness, wasted time, and excessive stress resulting in doubt as to the effectiveness of the Fair Credit Reporting Act and the power of this Court to preserve and perpetuate Plaintiff's rights to accurate credit reporting as intended by Congress.

106.    Plaintiff has been denied credit, offered credit at higher than normal interest rates and higher deposit amounts based on the inaccurate reporting by RBFCU. Further, Plaintiff's diminished creditworthiness, resulting from RBFCU's inaccurate reporting, has caused him to abandon his intentions to apply for certain credit.

107.    RBFCU's actions, as alleged herein, are in direct violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

108.    Plaintiff has been denied credit, offered credit at higher than normal interest rates and higher deposit amounts based on the inaccurate reporting by Experian. Further, Plaintiff's diminished creditworthiness, resulting from Experian's inaccurate reporting, has caused him to abandon his intentions to apply for certain credit.

109.    Experian's actions, as alleged herein, are in direct violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681.

110.    Plaintiff has been denied credit, offered credit at higher than normal interest rates and higher deposit amounts based on the inaccurate reporting by Equifax. Further, Plaintiff's diminished creditworthiness, resulting from Equifax's inaccurate reporting, has caused him to

abandon his intentions to apply for certain credit.

111.    Equifax's actions, as alleged herein, are in direct violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681.

112.    Plaintiff has been denied credit, offered credit at higher than normal interest rates and higher deposit amounts based on the inaccurate reporting by TransUnion. Further, Plaintiff's diminished creditworthiness, resulting from TransUnion's inaccurate reporting, has caused him to abandon his intentions to apply for certain credit.

113.    TransUnion's actions, as alleged herein, are in direct violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681.

## FIRST CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))

### (Against CRA Defendants)

114.    Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.    Experian, Equifax, and TransUnion Each Failed to Assure Credit Reporting Accuracy**

115.    Experian, Equifax, and TransUnion each independently violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and the credit files each published and maintained concerning Plaintiff.

116.    If the CRA Defendants had reasonable procedures to assure maximum accuracy, they would have either deleted or blocked the inaccurate information after being notified of the fraudulent reporting by Plaintiff's detailed dispute letters along with supporting documents.

117.    Had Experian maintained reasonable procedures to assure maximum accuracy, Experian would have blocked the RBFCU tradelines from reporting and prevented RBFCU from continuing to report the fraudulent accounts as described herein.

118.    Experian knew, or should have known, (1) that the RBFCU accounts were fraudulent, (2) that the RBFCU accounts should not be reported due to the identity theft, (3) that RBFCU should not continue to update the fraudulent account reporting, and (4) that the RBFCU accounts included derogatory reporting which decreased Plaintiff's creditworthiness. Further,

Experian knew, or should have known, that this inaccurate and fraudulent reporting does not reflect *maximum possible accuracy and completeness* as required by the FCRA.

119. Had Equifax maintained reasonable procedures to assure maximum accuracy, Equifax would have blocked the RBFCU tradelines from reporting and prevented RBFCU from continuing to report the fraudulent accounts as described herein.

120. Equifax knew, or should have known, (1) that the RBFCU accounts were fraudulent, (2) that the RBFCU accounts should not be reported due to the identity theft, (3) that RBFCU should not continue to update the fraudulent account reporting, and (4) that the RBFCU accounts included derogatory reporting which decreased Plaintiff's creditworthiness. Further, Equifax knew, or should have known, that this inaccurate and fraudulent reporting does not reflect *maximum possible accuracy and completeness* as required by the FCRA.

121. Had TransUnion maintained reasonable procedures to assure maximum accuracy, TransUnion would have blocked the RBFCU tradelines from reporting and prevented RBFCU from continuing to report the fraudulent accounts as described herein.

122. TransUnion knew, or should have known, (1) that the RBFCU accounts were fraudulent, (2) that the RBFCU accounts should not be reported due to the identity theft, (3) that RBFCU should not continue to update the fraudulent account reporting, and (4) that the RBFCU accounts included derogatory reporting which decreased Plaintiff's creditworthiness. Further, TransUnion knew, or should have known, that this inaccurate and fraudulent reporting does not reflect *maximum possible accuracy and completeness* as required by the FCRA.

123. Congress specifically recognized the "elaborate mechanism developed for investigating and evaluating credit worthiness, credit standing, credit capacity, character, and general reputation of consumers." *Nayab v. Capital One Bank (USA), NA*, 942 F. 3d 480, 492 (9th Cir. 2019). The investigation and evaluation of Plaintiff's credit worthiness, credit standing, credit capacity, character and general reputation as a consumer are all damaged by the inaccurate reporting each of the CRA Defendants independently allowed.

124. As a result of the CRA Defendants' independent violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit, and other mental and emotional distress.

**B.      Willful Violations**

125.    The CRA Defendants' independent violations, as described herein, were willful; specifically, the CRA Defendants have intentionally and purposefully set up a system where inaccuracies are not only probable, but inevitable.

126.    The CRA Defendants regularly, as a policy, ignore disputes by consumers and fail to perform even a basic investigation regarding the disputes. Additionally, the CRA Defendants regularly fail to forward disputes to data furnishers, thereby frustrating the entire dispute process.

127.    To the extent the CRA Defendants do send consumer disputes, the CRA Defendants send these disputes to employees who do not live within the continental United States to hide or subvert a consumer's liability to confront the individual(s) directly responsible for approving accurate reporting.

128.    The CRA Defendants' respective employees receive little to no training concerning how to accurately report consumer debt.

129.    Instead, the CRA Defendants' respective employees are instructed to parrot whatever information a data furnisher provides regardless of whether the information is accurate.

130.    The CRA Defendants' respective employees are regularly expected to review and approve over ninety (90) disputes per day, rendering less than five (5) minutes to review, investigate, and respond to each dispute received.

131.    The CRA Defendants have intentionally set up this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

132.    As a result of the CRA Defendants' independent violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit, and other mental and emotional distress.

133.    The CRA Defendants' independent violations were willful, rendering each individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

134.    In the alternative, the CRA Defendants were each negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

135.    Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from each of the CRA Defendants in an amount to be determined by this Court

pursuant to 15 U.S.C. § 1681n and § 1681o.

## SECOND CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))

### (Against RBFCU)

136.    Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.    RBFCU Failed to Reinvestigate Following Plaintiff's Disputes**

137.    Pursuant to 15 U.S.C. § 1681s-2(b), data furnishers are prohibited from providing any information relating to a consumer to any CRA if it knows, or has reasonable cause to believe, that the information is inaccurate or misleading and requires data furnishers to update and/or correct inaccurate information after a CRA notifies it of a consumer dispute.

138.    RBFCU supplied Experian, Equifax, and TransUnion with information about Plaintiff that was fraudulent, false, misleading, and inaccurate.

139.    It is on information and belief that after Experian, Equifax, and TransUnion received Plaintiff's disputes, each of the credit reporting agencies notified and forwarded Plaintiff's disputes to RBFCU.

140.    Therefore, RBFCU has received at least five (5) separate notices that the accounts are the result of identity theft and at least five (5) separate times has disregarded this fact and continued to report.

141.    In addition, Plaintiff directly disputed the accounts and notified RBFCU of the fraud back in November 2022; yet RBFCU refused to conduct any investigation and continued to report the fraudulent accounts on Plaintiff's credit reports.

142.    Plaintiff has directly and indirectly disputed his accounts with RBFCU dating back to November of 2022. Despite all the disputes and notices, RBFCU refused to remove the reporting or conduct any investigation into its inaccurate reporting. Instead, RBFCU continued to report incorrectly, harming Plaintiff's credit score, creditworthiness, and reputation. In addition, the reporting caused Plaintiff to waste significant time and incur costs to help resolve the error.

143.    Despite notice of the accounts' fraudulent nature, RBFCU continued to send AUDs or monthly transmission to Experian, TransUnion, and Equifax reporting the RBFCU accounts as charged off, with outstanding balances, past due amounts, charged off amounts, and derogatory

payment histories.

144.    After receiving the First Equifax Dispute Letter and First TransUnion Dispute Letter, RBFCU did not remove the accounts. Instead, RBFCU verified and re-reported the accounts as described herein via ACDV to Equifax and TransUnion.

145.    After receiving the Second Equifax Dispute Letter, Experian Dispute Letter, and Second TransUnion Dispute Letter, RBFCU did not remove the accounts. Instead, RBFCU verified and re-reported the accounts as described herein via ACDV to Equifax, TransUnion, and Experian.

146.    On multiple occasions RBFCU violated 15 U.S.C. § 1681s-2(b) by either failing to conduct an investigation or failing to conduct a reasonable investigation, and re-reporting misleading and inaccurate account information.

147.    Had RBFCU conducted a reasonable investigation, it would have recognized that the accounts did not belong to Plaintiff and would have properly deleted the accounts from Plaintiff's credit reports.

148.    Experian, Equifax, and TransUnion all provided notice to RBFCU that Plaintiff was disputing the inaccurate and misleading information; however, RBFCU failed to conduct a reasonable investigation as required by the FCRA.

149.    Based on Plaintiff's disputes along with a review of its own internal records concerning the applications and histories of the accounts, RBFCU should have known the accounts were fraudulently opened.

150.    Each time RBFCU received a dispute it had a duty to review all relevant information and update any incorrect or inaccurate information to each of the credit reporting agencies.

151.    Reporting a fraudulent debt is patently incorrect and misleading.

152.    In addition to not being Plaintiff's accounts, the reporting contains a vast amount of derogatory reporting. As Plaintiff is not legally liable on these accounts, the derogatory reporting as described herein has a direct adverse effect on Plaintiff's Credit Score and his ability to obtain credit.

153.    The lack of investigation by RBFCU, as required by the FCRA, is unreasonable.

154.    As a result of RBFCU's violations of 15 U.S.C. § 1681s-2(b), Plaintiff has suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation,

dissemination of inaccurate information, diminished credit, and other mental and emotional distress.

**B.    Willful Violations**

155.    Plaintiff alleges that RBFCU has reported based upon objectively unreasonable interpretations of the FCRA standards of credit reporting and regulatory guidelines on how to accurately report under the FCRA.

156.    Plaintiff further alleges that RBFCU has not properly trained those directly investigating disputes on FCRA requirements or credit reporting industry standards and, as such, has developed reckless policies and procedures.

157.    Plaintiff alleges that rather than train its employees on accurate credit reporting, FCRA requirements, and industry standards, RBFCU's employees tasked with reviewing disputes are expected to confirm the information being reported as "accurate" instead of investigating the reported information.

158.    Given the history of the accounts as all opened in succession with minimum amounts paid until they were all maxed out, the instant notice directly from Plaintiff of the fraud, the multitude of disputes which followed and reiterated the fraud, along with RBFCU's actions to ignore the disputes and Police Report shows RBFCU has blatantly disregarded its obligations under the FCRA. All of this evidence, taken together, establishes RBFCU's willfulness in its inaccurate and fraudulent reporting.

159.    In the alternative, RBFCU was negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

### THIRD CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(1))

### (Against CRA Defendants)

160.    Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.    The CRA Defendants Each Failed to Reinvestigate the Disputed Information in violation of 15 U.S.C. § 1681i(a)(1)**

161.    Pursuant to 15 U.S.C. § 1681i(a)(1), Equifax was required to conduct a reasonable investigation and to delete any information that was not accurate after receiving notice of

Plaintiff's disputes regarding the fraudulent RBFCU accounts.

162.    Thus, Equifax twice failed to conduct a reasonable investigation and remove the accounts within the statutory time frame.

163.    Pursuant to 15 U.S.C. § 1681i(a)(1), TransUnion was required to conduct a reasonable investigation and to delete any information that was not accurate after receiving notice of Plaintiff's disputes regarding the fraudulent RBFCU accounts.

164.    Thus, TransUnion twice failed to conduct a reasonable investigation and remove the accounts within the statutory time frame.

165.    Pursuant to 15 U.S.C. § 1681i(a)(1), Experian was required to conduct a reasonable investigation and to delete any information that was not accurate after receiving notice of Plaintiff's disputes regarding the RBFCU accounts.

166.    Thus, Experian failed to conduct a reasonable investigation and remove the accounts within the statutory time frame.

167.    The CRA Defendants are not passive entities bound to report whatever information a data furnisher provides.

168.    Plaintiff alleges the CRA Defendants are readily familiar with the FCRA requirements and credit reporting industry standards.

169.    Based on the foregoing, Plaintiff alleges that the CRA Defendants can, and do, suppress inaccurate information from being reported when data furnishers provide inaccurate information.

170.    The CRA Defendants can and do instruct data furnishers on how to properly report certain accounts from time to time upon request from a data furnisher.

171.    Equifax failed to conduct a reasonable investigation because any basic investigation would have uncovered that Plaintiff's disputes had established that the RBFCU accounts were fraudulent.

172.    Had Equifax conducted a proper investigation, it could have removed the RBFCU accounts from the credit report. However, Equifax continued to report each as described herein.

173.    Equifax, therefore, did not conduct even the most basic investigation regarding the requirements set forth in the FCRA or credit reporting industry standards, otherwise the aforementioned would have been uncovered.

174.    In the alternative, Plaintiff alleges that Equifax failed to send an ACDV to RBFCU

to confirm accurate reporting on its accounts. Despite receiving the First Equifax Dispute Letter providing notice of the fraudulent accounts, Equifax failed to delete the tradelines or conduct an investigation.

175.   In the alternative, Plaintiff alleges that Equifax failed to send an ACDV to RBFCU to confirm accurate reporting on its accounts. Despite receiving the Second Equifax Dispute Letter providing notice of the fraudulent accounts, Equifax failed to delete the tradelines or conduct an investigation.

176.   TransUnion failed to conduct a reasonable investigation because any basic investigation would have uncovered that Plaintiff's disputes had established that the RBFCU accounts were fraudulent.

177.   Had TransUnion conducted a proper investigation, it could have removed the RBFCU accounts from the credit report. However, TransUnion continued to report each as described herein.

178.   TransUnion, therefore, did not conduct even the most basic investigation regarding the requirements set forth in the FCRA or credit reporting industry standards, otherwise the aforementioned would have been uncovered.

179.   In the alternative, Plaintiff alleges that TransUnion failed to send an ACDV to RBFCU to confirm accurate reporting on its accounts. Despite receiving the First TransUnion Dispute Letter providing notice of the fraudulent accounts, TransUnion failed to delete the tradelines or conduct an investigation.

180.   In the alternative, Plaintiff alleges that TransUnion failed to send an ACDV to RBFCU to confirm accurate reporting on its accounts. Despite receiving the Second TransUnion Dispute Letter providing notice of the fraudulent accounts, TransUnion failed to delete the tradelines or conduct an investigation.

181.   Experian failed to conduct a reasonable investigation because any basic investigation would have uncovered that Plaintiff's disputes had established that the RBFCU accounts were fraudulent.

182.   Had Experian conducted a proper investigation, it could have removed the RBFCU accounts from the credit report. However, Experian continued to report each as described herein.

183.   Experian, therefore, did not conduct even the most basic investigation regarding the requirements set forth in the FCRA or credit reporting industry standards, otherwise the

aforementioned would have been uncovered.

184.    In the alternative, Plaintiff alleges that Experian failed to send an ACDV to RBFCU to confirm accurate reporting on its accounts. Despite receiving the Experian Dispute Letter providing notice of the fraudulent accounts, Experian failed to delete the tradelines or conduct an investigation.

185.    In the alternative, if the CRA Defendants deemed the dispute letters "frivolous or irrelevant" under 15 U.S.C. § 1681i(a)(3), the CRA Defendants each failed to notify Plaintiff of such determination as required by 15 U.S.C. § 1681i(a)(3)(B). As Plaintiff received such notice from either of the CRA Defendants, Plaintiff alleges each of the CRA Defendants deemed the dispute letters valid, and thus triggered their independent obligations under 15 U.S.C. § 1681i(a)(1) and (2)(A), for which each failed to comply.

## FOURTH CAUSE OF ACTION
### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
### (Against CRA Defendants)

186.    Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.    The CRA Defendants Each Failed to Review and Consider all Relevant Information**

187.    The CRA Defendants each independently violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information, including the disputes submitted by Plaintiff and the Police Report.

188.    The CRA Defendants' independent violations of 15 U.S.C. § 1681i(a)(4) have caused Plaintiff to suffer actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**B.    Willful Violations**

189.    The CRA Defendants' independent violations were willful, rendering each individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

190.    In the alternative, the CRA Defendants were each negligent in failing to review and consider all relevant information Plaintiff submitted, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

191.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from each of the CRA Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## FIFTH CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))

### (Against CRA Defendants)

192.    Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.      The CRA Defendants Each Failed to Delete Disputed and Inaccurate Information**

193.    The CRA Defendants each independently violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

194.    The CRA Defendants' independent violations of 15 U.S.C. § 1681i(a)(5)(A) have resulted in Plaintiff suffering actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**B.      Willful Violations**

195.    The CRA Defendants' independent violations were willful, rendering each individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

196.    In the alternative, the CRA Defendants were each negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

197.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from each of the CRA Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SIXTH CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. §§ 1681c-2 and 1681s(f))

### (Against CRA Defendants)

198.    Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.**     **The CRA Defendants Each Failed to Block the Disputed and Inaccurate Information and Failed to Send Proper and Prompt Notice of the Dispute to RBFCU**

199.     The CRA Defendants each violated 15 U.S.C. § 1681c-2(a) when they failed to block the reporting of information in Plaintiff's consumer file that Plaintiff identified as having resulted from an alleged identity theft within four (4) business days of receipt of Plaintiff's dispute as required by the FCRA.

200.     Based on facts, information, and allegations within the complaint, the CRA Defendants willfully, intentionally, recklessly, and/or negligently violated this section of the FCRA.

201.     After Plaintiff discovered that someone stole his identity and opened multiple RBFCU accounts, Plaintiff disputed the fraudulent activity to each of the CRA Defendants. Plaintiff attached a copy of his driver's license, a current bill, and Police Report to his disputes for verification.

202.     The CRA Defendants each failed to block the reporting of the disputed and fraudulent information within four (4) business days after receipt of Plaintiff's disputes.

203.     After receiving Plaintiff's identity theft dispute, Equifax continued to report the fraudulent RBFCU accounts on Plaintiff's credit report.

204.     After receiving Plaintiff's identity theft dispute, Experian continued to report the fraudulent RBFCU accounts on Plaintiff's credit report.

205.     After receiving Plaintiff's identity theft dispute, TransUnion continued to report the fraudulent RBFCU accounts on Plaintiff's credit report.

206.     Each CRA Defendant failed to maintain a procedure to refer Plaintiff's identity theft complaint to the other CRAs in violation of 15 U.S.C. § 1681s(f)(1).

207.     Each CRA Defendant failed to properly and promptly notify RBFCU that the accounts were disputed as a result of identity theft, an identity theft report has been filed, that a block was requested, and the effective dates of the block in violation of 15 U.S.C. § 1681c-2(b).

208.     The CRA Defendants' independent violations of 15 U.S.C. §§ 1681c-2(a) and 1681c-2(b) have resulted in Plaintiff suffering actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**B.     The CRA Defendants Each Failed to Send Notice to Plaintiff of Their Declination to Block the Disputed and Inaccurate Information**

209.    The CRA Defendants each violated 15 U.S.C. § 1681c-2(c)(2) when they failed to notify Plaintiff of their declination to block the disputed and inaccurate information.

210.    Under 15 U.S.C. § 1681c-2(c)(2) credit reporting agencies are required to notify the affected consumer promptly if a requested block of information is either declined or rescinded.

211.    Although Plaintiff notified the credit reporting agencies of the fraudulent and inaccurate information, and despite the fact that this information still remains on Plaintiff's credit reports, the CRA Defendants did not provide Plaintiff with notice of their refusal to block this information. Had Plaintiff been notified, he could have taken additional corrective actions to get the fraudulent activity addresses swiftly.

212.    The CRA Defendants' independent violations of 15 U.S.C. § 1681c-2(c)(2) have resulted in Plaintiff suffering actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**C.     Willful Violations**

213.    The CRA Defendants' independent violations were willful, rendering each individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

214.    In the alternative, the CRA Defendants were each negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

215.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from each of the CRA Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**PRAYER FOR RELIEF**

216.    WHEREFORE, Plaintiff prays for judgment as follows:

    a.  For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;

    b.  Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;

    c.  Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;

d.   Award attorneys' fees and costs of suit incurred herein pursuant to 15 U.S.C. §§ 1681n and 1681o;

e.   For determination by the Court that Defendant's policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, *et seq*.; and

f.   For determination by the Court that Defendant's policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

Respectfully submitted,

Dated: May 15, 2024

*/s/ Joshua Lane*
Joshua Lane
Texas State Bar No.: 24092665
SCHUMACHER LANE PLLC
P.O. Box 558
Spring Branch, TX 78070
210-541-2154 ph
210-783-1383 fax
josh@schumacherlane.com
*Attorney for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of this matter by jury.

Dated: May 15, 2024

*/s/ Joshua Lane*
Joshua Lane